[No. 16981.  Department Two.  March 30, 1922.]

CHRIS RUSTAN, *Respondent*, v. SOUTHERN ALASKA
CANNING COMPANY, *Appellant*.[1]

MASTER AND SERVANT (111)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—DUTY TO DISCOVER DEFECTS.  A ship carpenter engaged in enlarging a hole in a roof is not guilty of contributory negligence, as a matter of law, in choosing the more direct way to his work and in stepping into a tank of hot water, where the top of the tank, which had been covered with boards, was one of the steps up, a board had been removed, the light was poor, and the tank was filled with hot water for the first time, all without his knowledge, where it appears that the other route to the roof was still more dangerous.

SAME (98)—ASSUMPTION OF RISKS—KNOWLEDGE—MAKING PLACE SAFE.  In such a case, the rule that a servant assumes the risk of working in a place which he was engaged in making safe has no application, since his work had nothing to do with making the place safe.

MASTER AND SERVANT (104-1)—NEGLIGENCE (26)—STATUTORY PROVISIONS—COMPARATIVE NEGLIGENCE—RELATIVE DEGREES—DAMAGES.  In an action by a servant for personal injuries based on the comparative negligence statute of Alaska, it is error to instruct that, if the negligence of the plaintiff was gross and the proximate cause of the accident, he could not recover; and to refuse defendant's request to instruct that, if both parties were negligent and the plaintiff's negligence slight and defendant's gross, then the actual damages should be reduced in proportion to the amount of negligence chargeable to the plaintiff.

Appeal from a judgment of the superior court for King county, Tallman, J., entered May 31, 1921, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort.  Reversed.

*Wright, Kelleher, Allen & Hilen,* for appellant.
*H. D. Moore,* for respondent.

HOLCOMB, J.—Respondent was employed by appellant as a carpenter, and was directed to enlarge the

[1]Reported in 205 Pac. 369.

opening around the smokestack of its cannery at Rose Inlet, Alaska. There were two ways of access to the place where the hole was to be cut in the roof, where respondent did the work; one being by a stairway at some distance from the smokestack, as respondent stated, at least 100 feet from it, probably more, up to an attic, which was partly floored for about two-thirds of the distance back to the smokestack, but was filled with empty boxes and lumber, and from where the floor ceased, over a couple of loose planks laid side by side on the cross-beams of the structure, and under the slope of the roof, in semi-darkness, to the smokestack. The other way was by means of a post running from the floor to the roof, about 8 by 8, or 10 by 10 inches in dimension, which had cleats nailed across it, thus forming a ladder which led almost directly to the place of the work; at the foot of which post, and against it, was a box or tank apparently made of old planks, appearing to be gray or weather beaten; a new fish box or packing box was placed against it and used for the first step, it being about two and a half feet high; the second step being the top of the tank; and then up the cross-pieces nailed to the post to the cross-beams, a distance of about twelve feet from the floor. Respondent was given a helper, but was not directed which way to use in going to the place of work; but he and the helper, for about four days in which they were preparing to cut the hole in the roof by building scaffolding and erecting braces for the roof, used the post and cross-pieces as a stairway in going up and down. The large box or fish tank had a cover of loose boards, consisting of about three boards twelve inches wide laid on the top. The cannery had not started operation, but was being made ready to operate.

On the day in question, neither respondent nor his

helper knew of the box or tank containing hot water nor what the box was used for. There was no evidence that it had ever before held hot water, and there was no indication of it, so far as they could see, on that afternoon. The accident occurred about 5 o'clock in the afternoon, the day being cloudy and misty, and respondent had been working on the outside of the roof. Having occasion to go inside, he went down on the outside and came into the cannery building through the door. When intending to return to the roof, he went up by means of the cross-pieces and post near the place where he was to cut the hole in the roof, and stepped in the same way upon the small box, and thence to the top of the large box or tank, but a plank had been removed and his foot and leg went into the hot water which had been put into the tank, severely scalding him.

He and his helper testified that it was difficult to see on the inside of the cannery, especially after having come from the outside, but when using the boxes as steps to the post they could always see the small box or packing case, because it was new and bright-looking. The fisherman, who was employed as a fireman, was engaged in making some repairs or alterations to the hot water tank or box, and had removed the plank, which had been there before this last trip of respondent, and was standing by the tank with his back to respondent, and gave respondent no warning that he had removed the plank. Respondent was so severely scalded that the skin came off his ankle in large strips. He was taken that night to a place at some distance where there was a doctor, and received medical attention early the next morning. He suffered a great deal of pain, but in five or six weeks was able to go back and do light work. About a year later his

ankle became worse, through an ailment called a "keloid" growing upon the injured ankle where the scald had been, cutting off the circulation in his foot, causing him great pain, and making it impossible for him to stand upon that foot and ankle any great length of time. Medical expert witnesses testified that the condition was a permanent injury which would not yield to surgery. Respondent testified that on account of the injury he was no longer able to follow his trade of ship carpenter.

Respondent predicated his action upon the Alaska statute, being compelled so to do in view of our workmen's compensation act. The Alaska statute reads as follows:

"Section 2. That in all actions hereafter brought against a master or employer such as is mentioned in the first section hereof, to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery where his contributory negligence was slight and that of the employer was gross in comparison, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. All questions of negligence and contributory negligence shall be for the jury." Alaska Laws of 1913, ch. 45, p. 84, § 2.

Appellant conformed to the requirements of the Alaska statute by affirmatively alleging respondent's own negligence.

Appellant earnestly insists that its motion for nonsuit, for an instructed verdict, or for judgment n. o. v. should have been granted, but also urges in the alternative that its motion for a new trial should be granted.

Appellant insists that a reading of the record discloses an absolute total failure to prove any negligence

of appellant or its agents or employees, except respondent himself.

It is urged that the cannery was just being put into shape; that appellant had two means of access to the roof, where he had been directed to work; that he voluntarily chose the one over the fish box or steam tank and up the post and was not directed to do so, and that he was therefore guilty of gross negligence which was the proximate cause of the injury, and that he also assumed the risk. Cases are cited to the effect that,

"The servant assumes the ordinary risks and dangers of his employment that are known to him, and those that might be known to him by the exercise of ordinary care and foresight."

We are unable to agree with the appellant as to these contentions. From the condition in which the route to the roof by means of the stairway was shown to be, and the lack of any adequate and safe passageway from where the floor ceased to the place where the work was to be done, it would undoubtedly have been more negligent to go that way. As to the method of going to the place of work by means of the boxes and cleats nailed upon the post up to the cross-pieces almost directly to the place of work, that would undoubtedly appear to be ordinarily safe. The large box which respondent had stepped upon for three or four days had been safe during all that time and had a cover over it, even though it did consist of loose planks, and the tank had had no steam or hot water in it. On this occasion, coming in from the brighter outside light into the more obscure interior of the building, there being no steam apparently escaping from the tank or box, and the respondent not having been warned that the plank had been removed from the top thereof, it cannot be doubted that the triers of the facts were justi-

fied in holding that respondent was not negligent at that time in following the route he did. and had theretofore followed.

In *Johnson v. Tacoma Mill Co.*, 22 Wash. 88, 60 Pac. 53, a carpenter was employed to change a pipe on the mill where he had not been at work before, although he had worked for some time in and about the mill. After erecting the pipe, he stepped back to see if the same was perpendicular, and stepped into a barrel of hot water, which was located a few feet from the sidewalk and opposite the place where the pipe was erected. The barrel was sunk into the ground, its top being on a level with the surface of the ground. It was used to receive water and steam coming from the exhaust or drain pipe of some engine, the drain pipe connecting the engine with the barrel. By reason of stepping into this barrel he was scalded and injured. The mill was not running at the time, and no steam was observable in the sunken barrel. It was there held that the injured party had a right of action against the mill company on the ground of its negligence in not furnishing him a safe place in which to work. The facts in this case make the proposition in that case very applicable. The place which had been ordinarily safe had been unexpectedly, and without knowledge of respondent, made unsafe by the removal of the box cover and the putting of hot water into the tank.

Appellant also contends that respondent assumed the risk of the conditions under which he was working, because the place itself was in process of being made safe. It is a general rule that where the servant himself is engaged in making a dangerous place safe, he assumes the risk of the dangerous conditions of which he has knowledge. We so held in *Lewinn v. Murphy,* 63 Wash. 356, 115 Pac. 740, Ann. Cas. 1912D 433, L. R.

A. 1917E 198. That rule does not apply here, however, for the work of the fisherman or fireman upon the construction of a steam tank, and the work of respondent himself in enlarging the hole for the smokestack through the roof, were neither work for the purpose of rendering the place safe. They were both engaged in the work of making ready for the operation of the cannery in general. We are therefore convinced that the case, under the facts shown and the rules of law applicable, was one to be submitted to the jury.

The trial judge submitted very fair, comprehensive and elaborate instructions to the jury; fair to both parties, except in one particular. He quoted almost literally the statute of Alaska, mentioning that the same was the law of Alaska as set forth in this opinion, and followed that instruction with a paragraph as follows:

"If, on the other hand, you should find that the negligence of the plaintiff was gross and the proximate cause of the accident, then the plaintiff cannot recover at all."

The court also instructed the jury in a later instruction to the effect that, if they found for plaintiff, it would become their duty to assess the damages in such amount as would fairly and justly compensate the plaintiff for the injuries which he established upon the trial, if any, and for the pain and suffering, if any, which he has endured by reason of such injury, and for the pain and suffering, if any, which he is reasonably certain to suffer in the future, and for the loss of earning capacity, if any, established upon the trial, and in so doing to take into consideration the severity of such injuries or the impairment of any of his faculties and health by reason of such injuries; but in no case to exceed the sum prayed for in the complaint,

namely, the sum of $10,000. The jury rendered a verdict in the sum of $3,000.

Appellant complains that the instruction as given wholly leaves out of consideration the element which the Alaska statute makes mandatory, whether the negligence of the workman and the employer was gross or slight in comparison.

Respondent contends that the paragraph above quoted, following the statement of the Alaska statute, avoids the error which appellant claims. We do not so view it. The paragraph relied upon by respondent simply instructs the jury that, if the negligence of plaintiff was gross and was the proximate cause of the accident, then he could not recover at all. It was the duty of the court to give the jury the instruction as to the comparative negligence of the parties. It seems that, when the court reached the question of the measure of damages to instruct the jury upon, he overlooked the Alaska statute and the comparative negligence feature thereof upon which the right of action was based, and upon which appellant had requested an instruction, and instructed the jury to find for respondent in the full amount of damages or not at all. Appellant was deprived thereby of the right to have the jury apportion the negligence, if both parties were negligent and the negligence of respondent was not gross or the proximate cause of the injury, and so possibly reduce the damages. The instruction requested by appellant was to the effect that, if the jury found the plaintiff and defendant "were guilty of negligence which contributed toward the injury, but that the negligence of the plaintiff was slight and that that of the defendant was gross, then, in such event, you should determine what the actual damage suffered by plaintiff was, and then reduce the amount so found in pro-

portion to the amount of negligence chargeable to the plaintiff and find a verdict in favor of the plaintiff only for the balance left after making such reduction."

This instruction should have been given. Its refusal was error, for which reason the judgment is reversed and the case remanded for a new trial.

Reversed and remanded.

PARKER, C. J., MAIN, MACKINTOSH, and HOVEY, JJ., concur.